## EICHELBERGER v. MUTUAL LIFE INS. CO. OF NEW YORK et al.

### No. 234.

District Court, E. D. Virginia.

May 17, 1944.

Wm. Earle White, of Petersburg, Va., and Irvin G. Craig, of Richmond, Va., for plaintiff.

William Old, of Chester, Va. (J. Thompson Wyatt, of Petersburg, Va., on the brief), for defendant.

POLLARD, District Judge.

This litigation involves a dispute concerning the proceeds of a policy of insurance issued by the Mutual Life Insurance Company of New York on the life of Thomas R. Eichelberger. The policy also contained the usual provisions as to disability benefits and double indemnity. The insured died February 15, 1942, and the Company has paid into Court the sum of $4,665.29, which it is agreed by all persons claiming an interest in the policy or its proceeds is full satisfaction of all claims under the policy. The claimants to the fund are Rachel L. Eichelberger, the beneficiary named in the policy, and William C. Trueheart, the assignee.

The record presents three questions. These questions are:

1. Is the assignment from the insured and the beneficiary an absolute assignment, or a collateral assignment to secure advancements or loans from the assignee to the assignors?

2. Does the assignment cover all payments to be made under the policy of insurance?

3. Is the assignee barred from collecting the proceeds of the insurance because he has no insurable interest in the life of the insured?

The third question is one of law; the first question is one of fact; and should the Court in answering the first question determine that the assignment is a collateral assignment, then it will be unnecessary to answer the second and third questions.

The issue as to whether the assignment is absolute or collateral having been tried upon the facts without a jury, the Court, in accordance with Rule 52, 28 U.S.C.A. following section 723c, makes the following findings of fact and conclusions of law.

## Findings of Fact

I. The Mutual Life Insurance Company of New York on August 12, 1925, issued a policy of insurance on the life of Thomas R. Eichelberger, in which policy Rachel L. Eichelberger, the wife of the insured, was designated as beneficiary. The policy contained the usual double indemnity and disability features.

II. The policy on the life of Thomas R. Eichelberger was written by Graham H. Bruce, who resided in Chester, Virginia, but whose office was in Richmond, Virginia.

III. Thomas R. Eichelberger and Rachel L. Eichelberger were married on November 24, 1915, and went to live shortly thereafter at Chester, Virginia, and resided there as husband and wife almost continuously until June 18, 1930, during all of which time they lived in the home of the parents of Mr. Eichelberger. He had no definite profession or occupation and only worked a portion of the time. At the time of the separation on June 18, 1930, he was attempting to sell automobiles on a commission basis. Mrs. Eichelberger and their infant daughter were supported by Mr. Eichelberger's parents. Thomas R. Eichelberger was not strong and was not able to do physical labor and was suffering from a tubercular condition. He was given to the excessive use of intoxicants and was arrested on more than one occasion, charged with operating an automobile while drunk.

IV. By an assignment dated June 20, 1930, the insured and the beneficiary assigned the policy to William C. Trueheart, who had no insurable interest in the life of the insured. At the time of the assignment there was a loan on the policy made by the Mutual Life Insurance Company of New York. The evidence does not disclose the date of said loan but does disclose the amount of said loan to be $138 which sum, at the time the loan was made, was the full loan value of the policy.

V. William C. Trueheart, the assignee, resided at Chester, Virginia, and was and is an officer of the Chesterfield County Bank located in that town. He was not related to the Eichelbergers by blood or marriage and there was no business or close social relationship existing between the parties so far as the record discloses.

VI. On or about June 1, 1930, Thomas R. Eichelberger was arrested, charged with driving an automobile while drunk and he was in need of $50 to pay a fine to be imposed therefor or otherwise suffer the revocation of his permit to drive a car. Eichelberger approached Bruce and asked him "to give" him some money for his policy. Bruce declined and Eichelberger then suggested that Bruce see Trueheart and see if he would "give" him some money for it. Bruce saw Trueheart and informed Eichelberger that Trueheart would "give them some money for the policy."

VII. A check drawn by Bruce on Trueheart's bank, dated June 6, 1930, for the sum of $35, payable to Thomas R. Eichelberger, was delivered by Bruce to the insured. Said check was presented for payment on June 13, 1930, and by an arrangement previously made between Bruce and Trueheart was paid from the funds of Trueheart in the bank.

VIII. On or about June 10, 1930, Rachel Eichelberger went to the bank to see Trueheart. She had decided to leave her husband and was in need of the sum of $300 to pay the expenses of herself and infant daughter to California where she intended to reside. She asked Trueheart to let her have the money and asked him how she could get the money without her husband or his parents knowing it. Trueheart suggested that she get a check from her parents which she could show to the Eichelbergers and the check could be destroyed after it had served that purpose. Mrs. Eichelberger secured her mother's check, showed it to the Eichelbergers, and then carried it to Trueheart, who retained but never used the check, and let Mrs. Eichelberger have $300. Trueheart testified that he gave that amount to Mrs. Eichelberger.

IX. Rachel L. Eichelberger and her daughter left the State of Virginia on June 18, 1930. She obtained a divorce from Mr. Eichelberger in California in the year 1938.

X. The assignment from the Eichelbergers is dated June 20, 1930, which is two days after Mrs. Eichelberger left Virginia. The assignment is made on the insurance company's "Duplicate Assignment" form. There are written into the assignment form the following words: "W. C. Trueheart—Disability Income, if any, to as-

signee". On the same line near the right margin of the assignment the following is written in pencil: "L 6/3/30."

XI. In the year 1933 the insured filed with the Company a claim for disability benefits under the policy by reason of pulmonary tuberculosis, and benefits were allowed and paid to assignee for five years. Such payments were terminated in the year 1938 on the ground that the insured was no longer totally and permanently disabled. The insured and assignee objected to such discontinuance and a compromise settlement of the matter was made under which the disability provision of the policy was terminated and cancelled. By reason of the payment of disability benefits and a sum paid in consideration of the cancellation of such provision, the assignee received from the Company the sum of $3,290.02. This sum greatly exceeds the sums paid by the assignee to the insured and the beneficiary and the amounts paid by the assignee to the Company as premiums on the policy. Neither the insured nor the beneficiary made any claim to any portion of the disability benefits.

XII. The insured died on February 15, 1942, and the Company on August 28, 1942, paid into Court the net proceeds of said policy amounting to $2,865.29. The beneficiary and assignee thereafter asserted that the insured had met death by accidental means and such claim was compromised by the payment into Court by the Company of the sum of $1,800. Accordingly there is now held by the Court the sum of $4,665.29, and to this amount the beneficiary and the assignee are asserting conflicting claims.

XIII. The sums of $35, paid to the insured, and $300 paid to the beneficiary, have not been repaid. No interest has been paid thereon and no demand for the payment of principal or interest has been made by the assignee. The evidence does not disclose that any written evidence of debt was signed by either Thomas R. Eichelberger or Rachel L. Eichelberger, and neither of said parties ever made any offer to repay any part of the respective sums paid to them by Trueheart.

XIV. The assignment made June 20, 1930, executed by the insured and the beneficiary, is in form an absolute assignment.

In the light of the foregoing findings, what is the correct answer to the question first propounded—Is the assignment an absolute assignment or a collateral assignment to secure advances or loans from the assignee to the assignors?

The fact that the assignment is absolute on its face is of no great importance, It cannot be denied, or even questioned, that an assignment of an insurance policy, absolute on its face, may be shown to have been made as collateral security. And it is a matter of common business experience that banks and bankers, in making loans secured by policies of insurance, will exact of the borrowers assignments of such policies, absolute on their face.

It should be borne in mind that the Court is not bound by the terms "absolute" or "collateral" applied to the assignment by the assignee and the beneficiary, respectively. Such appellations are retrospectively formed opinions and conclusions of interested parties and must be appraised in that light. It is entirely possible, and very probable, that due to the exigencies of the occasion the parties did not pause to analyze the legal consequences of the act in which they were engaged and they did not at that time apply any appellation to such transaction. So it remains the duty of the Court to label the assignment as "absolute" or "collateral" after a consideration of all the facts and circumstances surrounding the transactions at the time of their consummation. When the question is thus approached I find no great difficulty in arriving at a correct answer.

In the year 1930 Eichelberger was in failing health and was in great need of a small sum of money. The policy of insurance which contained disability benefits was, so far as the record discloses, his sole asset. It is fair to assume that under such conditions Eichelberger desired to secure a loan on the policy rather than to part with all his rights therein. It is also true that the normal transaction which a bank or banker would make under the circumstances was a loan on the policy. It was no part of the ordinary business of a bank or banker to purchase a policy of life insurance issued to a person in whose life they had no insurable interest. In a time of need Eichelberger did the thing which any ordinary insured who wished to obtain a loan on his policy would do—he went to the agent who had written the policy. From this time on Bruce took charge of the matter, even to the extent of giving his check to Eichelberger for the

sum of money which Trueheart agreed he would let Eichelberger have. All of this transpired several days before Mrs. Eichelberger approached Trueheart concerning the securing of money from him on her account. At that time she had already signed the assignment and knew that her husband had secured money from Trueheart on the strength thereof. She evidently believed the transaction between her husband and Trueheart to have been a loan because had she believed that Trueheart held an absolute assignment of the policy by reason of the small sum he had let Eichelberger have, it is altogether improbable that she would have any hope that Trueheart would let her have a sum of money many times greater than that he had let her husband have.

When Trueheart was on the witness stand he made no claim that the $300 he let Mrs. Eichelberger have was a part of the consideration for an absolute assignment to him, and he dismisses the matter by saying that he made her a gift of said sum. The record discloses that Trueheart has heretofore received from the policy the sum of $3,290.02, and that if his contention is sustained by the Court, he will receive the further sum of $4,665.29, making a total of $7,955.31. In view of these figures and the fact that the record discloses no person, social or business reason why Trueheart should make a gift of $300 to Mrs. Eichelberger, it is more reasonable to label the transaction as a loan rather than as a gift.

These are some of the reasons that convince me that the transactions between the assignors and assignee were loans or advancements and that the assignment, although absolute on its face, was in fact given as collateral security. In so holding I am not unmindful that Mrs. Eichelberger's recollection of the occurrences in 1930 was inaccurate in several respects. However, it must be remembered she was testifying to events which had happened more than a dozen years before she was on the witness stand and that such inaccuracies relate to unimportant details. Her testimony as to the essential elements of the transaction remains unimpeached.

It is my understanding that Trueheart has received from disability payments under the policy a sum in excess of the amount advanced by him to the assignors and premiums paid by him on the policy. However, as Mrs. Eichelberger is making no claim to any part of the disability benefits, it will be unnecessary to make any findings as to such excess.

### Conclusion of Law

The assignment was a collateral assignment given by the assignors to the assignee to secure advances or loans and the assignee, having received from the disability benefit provisions sums of money sufficient to reimburse him for all advancements or loans made by him and premiums paid on the policy, is not entitled to receive any part of the funds now on deposit to the credit of the Court and that said sum should be paid to Rachel L. Eichelberger, the beneficiary named in the policy.

An order may be presented after reasonable notice.